STATE EX REL. SCHOPF, Petitioner, v. SCHUBERT, Superintendent, Central State Hospital, Respondent.

*No. State 113. Argued September 29, 1969.—Decided February 6, 1970.*
(Also reported in 173 N. W. 2d 673.)

646

For the petitioner there were briefs and oral argument by *James H. McDermott*, state public defender.

For the respondent the cause was argued by *Sverre O. Tinglum*, assistant attorney general, with whom on the briefs were *Robert W. Warren*, attorney general, and *William A. Platz*, assistant attorney general.

WILKIE, J. Petitioner maintains that the circuit court for Marathon county, in committing petitioner to Central State Hospital under sec. 957.11 (3), Stats., did so without making a finding of insanity at the time of commitment as distinguished from the time of the offense and without first according him a judicial hearing.

Petitioner contends that sec. 957.11 (3), Stats., is unconstitutional on two grounds: (1) It is a denial of equal protection of the laws, and (2) it is a denial of due process.

Thus the first issue presented is whether it is a denial of equal protection to automatically commit a person situated as defendant to Central State Hospital after a finding of not guilty by reason of insanity at the time of the offense.

The petitioner here was acquitted under the ALI test of insanity as set forth in *State v. Shoffner*.[2] Under that test, in order for the defendant to be successful in a not-guilty-by-reason-of-insanity plea, he assumes the burden of proving his mental incapacity at the time of committing the offense with which he is charged. This is a heavier burden than is faced under the M'Naghten test as provided in *Esser*,[3] wherein defendant merely had to be successful in raising a reasonable doubt as to his sanity—and the burden was on the state to overcome that doubt.

The contention here is that commitment of someone situated as petitioner, and the civil commitment of someone mentally ill under ch. 51, Stats., are so dissimilar as to be a denial of equal protection of the law. It is true that civil commitment procedures are materially different from the automatic commitment under sec. 957.11 (3). Under a ch. 51 commitment proceeding a written application for a mental examination is made to the county court of the county where the patient is. This written application must be made by at least three adult residents of the state.[4] Two licensed physicians are appointed to examine the patient and make a written report concerning his mental condition. A hearing is held wherein the patient has a right to be heard and to protest and oppose the proceedings, and cross-examine the doctors.[5] Also, a jury may be demanded by the patient and then a jury of six is drawn to determine his

---

[2] *Supra*, footnote 1.
[3] *Supra*, footnote 1.
[4] Sec. 51.01 (1) (a), Stats.
[5] Sec. 51.02 (2), Stats.

mental condition.[6] Presumably there is a right to appeal from this county court determination.[7] Moreover, the patient who is committed under these proceedings can thereafter petition for a re-examination.[8] Since 1967, every person committed involuntarily under ch. 51 must be re-evaluated by the medical staff or a visiting physician within thirty days after his commitment and again within six months after the initial re-evaluation and thereafter every twelve months.[9]

There are few, if any, of these safeguards provided to someone who is committed in a criminal case after an acquittal by reason of insanity.

The petitioner relies on several recent cases for authority for his argument that the manner by which he was committed denied him equal protection of the laws since the procedure used was different from the procedure used to civilly commit a person pursuant to ch. 51.

In *Baxstrom v. Herold,*[10] the United States Supreme Court decided that Baxstrom, a prisoner who had been placed in a mental hospital while serving a prison term, was denied equal protection of the laws by the operation of a New York statutory procedure whereby he was (1) civilly committed to a mental institution at the expiration of his sentence without the jury review available to all others civilly committed, and (2) administratively transferred, from a civil mental hospital to a functionally distinct institution for the dangerously insane without the judicial determination that he was dangerously mentally ill such as that afforded to all others so committed, except those about to terminate a prison sentence. The vice of this procedure was that it made an arbitrary classification with respect to persons entitled to a judicial hearing.

---

[6] Sec. 51.03, Stats.

[7] Sec. 324.01, Stats.

[8] Sec. 51.11, Stats.

[9] Sec. 51.075, Stats.

[10] (1966), 383 U. S. 107, 86 Sup. Ct. 760, 15 L. Ed. 2d 620.

A reading of *Baxstrom* makes it clear that what was objectionable there was that he was civilly committed by a procedure radically different from the procedure used to civilly commit others. The only reason for this was that he was a prisoner about to complete his sentence.

The denial of equal protection arose as a result of providing two different methods of *civil* commitment and with no reasonable basis for it.

In the instant case, the difference in procedure is not between persons civilly committed but rather the difference arises between civil commitment and criminal commitment after a verdict of not guilty by reason of insanity. Thus, on this basis, *Baxstrom* can be distinguished from the instant situation.

In *Bolton v. Harris,*[11] the circuit court of appeals for the District of Columbia was presented with the problem of different procedures used to commit persons civilly versus the automatic commitment of a person acquitted by reason of insanity.

In *Bolton,* the petitioner, who had successfully pleaded not guilty to a crime by reason of insanity was automatically committed under the provision of the District of Columbia Code, which provided in part:

"If any person tried . . . for an offense . . . is acquitted solely on the ground that he was insane at the time of its commission, the court shall order such person to be confined in a hospital for the mentally ill." [12]

The petitioner, on appeal from a denial of habeas corpus, argued that he was denied equal protection of the laws because he was committed to a mental institution without benefit of the protections afforded those civilly committed under the District of Columbia's 1964 Hospitalization of the Mentally Ill Act. The court rea-

[11] (D. C. Cir. 1968), 395 Fed. 2d 642.
[12] D. C. Code, sec. 24–301 (d), 1967; *Bolton v. Harris, supra,* footnote 11, at page 644.

soned that since *Baxstrom* decided that an individual's past criminal conduct, standing alone, did not give rise to a presumption of dangerousness which would justify substantially different commitment procedures and confinement conditions for the mentally ill, it was likewise impermissible to provide "radically different" procedures for patients acquitted by reason of insanity and for civilly committed patients.

The court said:

"*Baxstrom, Lally* [(1966), 19 N. Y. 2d 27, 224 N. E. 2d 87], and *Mullen* [(D. C. Cir. 1967), 387 Fed. 2d 193] render [the automatic commitment section] constitutionally suspect because the subsection provides radically different procedures for patients acquitted by reason of insanity and for civilly committed patients.[13]

". . .

". . . It is true that persons acquitted by reason of insanity have committed criminal acts and that this fact may tend to show they meet the requirements for commitment, namely, illness *and* dangerousness. But it does not remove these requirements. Nor does it justify total abandonment of the procedures used in civil commitment proceedings to determine whether these same requirements have been satisfied. Hence persons found not guilty by reason of insanity must be given a judicial hearing with procedures substantially similar to those in civil commitment proceedings." [14]

The reasoning of the *Bolton* court is erroneous. The equal protection clause disapproves only irrational and arbitrary classifications.[15] The classification made by the legislature in the instant situation between civil commitment and criminal commitment is neither irrational nor arbitrary, and, in fact, is perfectly reasonable.

The petitioner, by establishing his mental incapacity under the ALI test, has justified the automatic commit-

[13] *Bolton v. Harris, supra,* footnote 11, at page 650.

[14] *Id.* at page 651.

[15] *See McGowan v. Maryland* (1961), 366 U. S. 420, 81 Sup. Ct. 1101, 6 L. Ed. 2d 393.

ment imposed on him.[16] Concern for the general safety of the community requires at least this much. Thus, the difference in procedure does not offend the constitutional provisions requiring equal protection of the law.

The second issue raised by petitioner is whether his automatic commitment after a verdict of not guilty by reason of insanity is a denial of due process of law because it is accomplished without a judicial determination of his mental condition at the time of the commitment. Essentially, the argument is that while Schopf may have been insane at the time of the commission of the crime, it does not necessarily follow that he was insane at the time of the verdict.

There is a twofold objective in dealing with prisoners who have been adjudicated not guilty by reason of insanity: (1) Therapy for the mental disease from which they were suffering at the time of the crime, and (2) proper custodial handling so that the community is protected from individuals who may be dangerous to other persons.[17]

Thus, if a person so adjudged no longer suffers from the mental disorder which excused him from criminal responsibility and is no longer dangerous (or likely to suffer a relapse) he should be released.

With this, the court has no quarrel. However, there is dispute as to what is required to satisfy the due process clause. Petitioner again relies on the case of *Bolton v. Harris*[18] as authority for the proposition that commitment after a verdict of not guilty by reason of insanity without a judicial determination of present sanity violates due process. In that case the court considered the section of the District of Columbia's Code which required

[16] *Treglown v. H&SS Dept.* (1968), 38 Wis. 2d 317, 156 N. W. 2d 363.

[17] Shah, *The Mentally Disordered Offender*, in *Readings in Law and Psychiatry* (Richard C. Allen, ed. 1968), 347, 358.

[18] *Supra,* footnote 11.

automatic commitment after a finding of not guilty by reason of insanity. That court said:

". . . The more recent case of *Specht v. Patterson* [(1967), 386 U. S. 605, 87 Sup. Ct. 1209, 18 L. Ed. 2d 326] renders subsection (d) constitutionally suspect simply because the subsection fails to provide a hearing on present mental condition. In *Specht,* the Supreme Court held that a defendant convicted under Colorado law for 'indecent liberties' could not be given an indeterminate sentence under the Colorado Sex Offenders Act without a full hearing. It rejected the Tenth Circuit's contention that defendant was 'afforded all the rights of due process at the time of trial,' by pointing out that the imposition of an indeterminate sentence requires 'a new finding of fact [that the person convicted constitutes a threat of bodily harm to the public] that was not an ingredient of the offense charged [at trial].'

"After acquittal by reason of insanity there is also need for a new finding of fact: The trial determined only that there was a reasonable doubt as to defendant's sanity in the past, present commitment is predicated on a finding of present insanity. Thus *Specht* would appear to require that this finding be made in a hearing." (Bracketed material added in *Bolton v. Harris.*) [19]

The majority of this court are of the opinion that the procedures provided for the automatic commitment of prisoners under sec. 957.11 (3), Stats., are constitutionally adequate to satisfy the requirements of due process because of the re-examination procedures under sec. 957.11 (4).[20]

---

[19] *Bolton v. Harris, supra,* footnote 11, at page 650.

[20] Sec. 957.11 (4), Stats. "A re-examination of his mental condition may be had as provided in s. 51.11, except that his application for rehearing shall be to the committing court. If upon such re-examination the court finds he is insane or feeble-minded, another re-examination shall not be had unless the court is satisfied there is reasonable cause to believe that his mental condition is improved, in which case the court may order another examination. No person so committed shall be discharged unless the court, in addition to finding him sane and mentally responsible, also finds

In Wisconsin the prisoner adjudicated not guilty by reason of insanity can initiate proceedings to be reexamined and perhaps released the moment he arrives at the Central State Hospital. This factor alone is sufficient to distinguish the instant situation from the procedure questioned in *Bolton* and *Specht*. In both those cases there was a very real possibility of committing the prisoner for life with no opportunity for judicial review of the commitment. In *Bolton* the superintendent of the hospital was required to issue a certificate *before* the prisoner could challenge his commitment by habeas corpus. There was little or no judicial control over the superintendent to review his decision to issue or not issue the certificate. There is no such limitation here. However, in Wisconsin there is a statutory provision [21] which purports to deny persons committed to Central State Hospital the right of habeas corpus. This provision has been questioned before.[22] This court now holds it unconstitutional insofar as it attempts to deny the writ to inmates who seek to test the validity of their commitments.

Furthermore, in *Bolton* the court found that it was permissible for the prisoner to be detained for a reasonable period without a judicial determination of present mental condition. The purpose of this period of detention would be for examination. So, too, here the prisoner is sent to Central State Hospital, but with the right to petition for an examination the minute he arrives. Thus, this right creates a situation which is almost identical to the one provided in *Bolton*. In both situations the prisoner can be committed without a judicial determination of his present mental condition. In *Bolton*, this commitment is for a reasonable period for examination.

that he is not likely to have a recurrence of insanity or mental irresponsibility as will result in acts which but for insanity or mental irresponsibility would be crimes."

[21] *See* sec. 292.01 (2), Stats.

[22] *See Servonitz v. State* (1907), 133 Wis. 231, 113 N. W. 277.

In Wisconsin the length of this period is determined by the prisoner himself. When he petitions for the examination, he gets it.

Thus the majority of the court are satisfied that the Wisconsin procedure questioned here is not unconstitutional as a denial of due process of law.

A minority of the court, including Mr. Chief Justice HALLOWS, Mr. Justice HEFFERNAN, and the writer of this opinion, believe that the Wisconsin procedure does not meet the requirements of due process of law. The minority would construe the provisions of sec. 957.11 (3), Stats., to require a judicial hearing and a finding of insanity at the time of commitment as distinguished from the time of the alleged offense. The state should be permitted to hold one who has been found not guilty by reason of insanity for a reasonable period of observation following which a judicial hearing should be held, concluded by a judicial determination of present insanity. At this proceeding the defendant would have the burden of proving sanity, that he could be released without danger to the community, and that he would be unlikely to have a recurrence of insanity. This is consistent with the holding of *Bolton* and as so construed sec. 957.11 (3) would be constitutional.

*By the Court.*—Habeas corpus on the ground that petitioner's present commitment pursuant to sec. 957.11 (3), Stats., is unconstitutional is denied. The matter is referred to the Honorable HENRY G. GERGEN, JR., Circuit Judge of the Thirteenth Judicial Circuit, for fact finding in connection with the allegations in paragraph 11 of petitioner's amended petition and the answer set forth in paragraph 6 of the attorney general's answer thereto, which findings shall be filed with this court on or before forty days after this order becomes final.

HALLOWS, C. J. (*dissenting*). I agree with the "internal dissent" of Mr. Justice WILKIE in the majority

opinion. What the majority opinion does is to throw a roadblock in the path of an insane person. The majority opinion assumes the trial is so close in time after the commission of the alleged criminal act that a presumption of insanity at the time of sentencing can be accepted as a basis for a commitment under sec. 957.11 (3), Stats. As so construed, I believe the section is unconstitutional because it denies due process of law.

The testimony may show that the insanity at the time of the commission of the act was such that the insanity did not carry over until the time of the trial, yet the majority opinion would incarcerate the defendant without a hearing. There have been cases where a person has not been tried for years after the commission of the alleged criminal act because he was found unable to stand trial. Under the majority opinion, even though years later when he is sane enough to stand trial he would, if found not guilty because of insanity at the time of the commission of the act, be sent back to the hospital for the criminal insane without a hearing.

A person pleading insanity as a defense and being found not guilty on that ground should be detained for an automatic hearing upon his present mental condition. He should not be committed as an insane person because there is no affirmative finding at the time of his commitment that he is insane. This is glaringly true under the M'Naghten test of insanity because to be acquitted under that test the jury need only have a reasonable doubt of sanity. This doubt is far different than an affirmative finding of insanity upon which a man ought to be committed to the insane asylum. When confronted with the same problem of commitment without a hearing under the sex deviate law, this court held that due process required a hearing before a commitment. *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646. I would require a hearing to determine affirmatively whether the defendant is still insane before he is committed.