Perry Wayne REYNOLDS, Petitioner,

v.

Dr. Lex NEILL, Superintendent Rusk State Hospital, Respondent.

No. CA 3–74–91–B.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 4, 1974.

Neil H. Cogan, Walter W. Steele, Jr., Dallas, Tex., for petitioner.

John Hill, Atty. Gen., and Max Flusche, Asst. Atty. Gen., for respondent.

## OPINION OF THE COURT

Before GOLDBERG, Circuit Judge, and HUGHES and MAHON, District Judges.

PER CURIAM:

Petitioner Perry Wayne Reynolds filed a petition for a writ of habeas corpus in Texas state criminal district court on October 11, 1972. He alleged denial of both due process and equal protection in several aspects of his con-

finement at Rusk State Mental Hospital following acquittal of criminal charges pending against him.[1] The petition was denied, and the denial affirmed by the Court of Criminal Appeals of Texas. He then filed the petition in federal district court, alleging claims for relief on the basis of 28 U.S.C. § 2241 et seq., 42 U.S.C. § 1983, and 28 U.S.C. § 2201. A three judge court was also requested pursuant to 28 U.S.C. § 2281.

In a pre-trial order dated April 18, 1974, the issue of the constitutionality of Article 46.02 of the Vernon's Ann. Texas Code of Criminal Procedure was severed from the other issues in the case, and a three judge court was convened to decide the issue. Arguments were heard on June 7th, 1974.

Perry Wayne Reynolds was indicted by a grand jury in Dallas County on the charge of murder with malice on March 29th, 1968. In May of that year, Reynolds entered an affidavit alleging insanity at the time of the commission of the offense, and further stated that he was insane at the time of trial. The affidavit was accompanied by a motion to try the issue of Reynold's sanity prior to the trial on the merits. With the approval of the State's Attorney this was done, and the jury found that the defendant was both insane at the time the criminal act was committed, and that he was insane at the time of trial. The jury recommended his commitment to a mental hospital until he became sane.

Since that time, Reynolds has been confined at Rusk State Mental Hospital, the only place in the state of Texas where persons acquitted of crimes are placed upon determination of present mental insanity. It is stated by Petitioner, and not disputed by Respondent, that Reynolds has little chance of making substantial progress in reaching a level of sanity as prescribed by the jury to be the condition for his release.

At issue in this case are the standards for commitment, treatment, and release as set out under Article 46.02 of the Texas Code of Criminal Procedure. This is the statute which provides for the procedure by which a defendant in a criminal case may have his present sanity tried either in advance of a trial on the merits, or during such trial. The defense in bar of insanity at the time of offense may also be tried under this statute. Petitioner compares the procedures and standards of Art. 46.02 to those which apply to civilly committed persons under Vernon's Ann.Civ.St. Texas Mental Health Code, Article 5547, and to facilitate discussion of Petitioner's allegations, the procedures and standards under each of these statutes must be explained. Pertinent portions of the statutes are set out in the footnotes, and direct cites will be omitted in the text.[2]

---

1. The original commitment and continuing confinement are governed by Tex.Code Crim.Proc. art. 46.02 (Supp.1974).

2. Portions of Tex.Code Crim.Proc. art. 46.02 (Supp.1974) read as follows:

*Trial of insanity issue in advance of trial on merits*

Section 1. The issue of present insanity shall be tried in advance of trial on the merits, upon written application on behalf of the accused. If upon trial of the issue of insanity in advance of trial on the merits, the accused is found to be presently sane, the trial judge shall dismiss the jury which decided the issue of present insanity and empanel a new jury to hear any subsequent trial on the merits.

*Procedure at trial*

Sec. 2. (a) At the trial on the merits, the trial court shall hear evidence on the issue of present insanity (1) if prior to the offer thereof there be filed on behalf of the defendant's written motion asking the court to hear evidence on such issue and requesting the court to declare a mistrial because of such insanity in the manner and to the extent provided for in this article; or (2) if the defendant or his counsel otherwise asks for a decision or issue thereon, in which event such act of the defendant shall be treated and considered as if the defendant had filed such a motion for mistrial. For purposes of present insanity, the defendant shall be considered presently insane if he is presently incompetent to make a rational defense.

(b) When the issue of present insanity is tried, the following rules shall apply:

(1) The issue of present insanity shall be submitted to the jury only if supported by competent testimony.

(2) (a) Instructions submitting the issue of present insanity shall be framed so as to require the jury to state in its verdict whether defendant is sane or insane at the time of the trial.

(b) If there has been competent medical or psychiatric testimony to the effect that the defendant is presently insane, instructions submitting the issue of present insanity shall require the jury, if it finds the defendant presently insane, to state whether the defendant requires hospitalization in a mental hospital for his own welfare and protection or the protection of others.

(3) The charge shall instruct the jury that if it finds defendant is presently insane it will not consider or deliberate upon any other issues except (a) whether the defendant should be committed to a mental hospital; and (b) whether he was sane or insane as of the time of the alleged offense, if such issue be submitted.

(c) When the issue of insanity as of the time of the alleged offense is tried, the following rules shall apply :

(1) The issue of insanity as of the time of the alleged offense shall be submitted to the jury only if supported by competent evidence tending to show that defendant was insane as of the time of the alleged offense.

(2) Instructions submitting the issue of insanity as of the time of the alleged offense shall be framed so as to require the jury to state in its verdict whether defendant was sane or insane as of the time of the alleged offense.

(3) If the jury finds the defendant to have been insane at the time the offense is alleged to have been committed, the defendant shall stand acquitted of the alleged offense.

(d) The following rules shall apply upon defendant's being acquitted by reason of the jury's returning a finding that he was insane as of the time of the alleged offense :

(1) If the jury finds the defendant to be insane at the time of trial, and if the jury or the court further finds that the defendant should be committed to a mental institution, the court shall enter an order committing the defendant to Rusk State Hospital or to an agency of the United States operating a mental hospital or to a Veterans' Administration hospital, and placing him in the custody of the sheriff for transportation to the mental hospital to be confined therein until he becomes sane. The court shall further order that a transcript of all medical testimony adduced before the jury shall be forthwith prepared by the court reporter and such transcript shall accompany the patient to the mental hospital.

(2) If the jury returns a finding that defendant is sane as of the time of the trial, then the defendant shall be finally discharged.

(3) If there be no jury finding on the issue of present insanity, then the court, if the discharge or going at large of defendant be considered by the court manifestly dangerous to the peace and safety of the people, shall order defendant committed to jail or other suitable place pending the prompt initiation and prosecution by the attorney, for the state or other person designated by the court of appropriate civil proceedings to determine whether defendant shall be committed to a mental institution or the court may give defendant into the care of his friends on their giving satisfactory security for his proper care and protection ; otherwise, defendant shall be discharged.

(i) The head of the state mental hospital to which a person has been committed under the provisions of Sections 2(d) or 2(e) hereof may, with the permission of the committing court, transfer such person to any other state mental hospital or an agency of the United States operating a mental hospital or a Veterans' Administration hospital.

*Status of patient acquitted; post-commitment procedures*

Sec. 3. (a) A person committed to a State Mental Hospital or to a mental hospital operated by the United States or the Veteran's Administration under this Article upon a jury finding of insanity at the time of trial who has been acquitted of an alleged offense because of insanity at the time the alleged offense was committed is not by reason of that offense a person charged with a criminal offense. The procedures set forth in this Section, and no others, shall apply to all post-commitment determinations of the sanity of a person committed to a mental hospital upon a jury finding of insanity at the time of trial who has been acquitted of an alleged offense because of insanity at the time the alleged offense was committed and thereby is not a person charged with a criminal offense.

(b) If the head of mental hospital to which a person has been committed upon a finding of insanity at the time of trial who has been acquitted of the alleged offense, is of the opinion that the person is sane, the head of the mental hospital shall so notify the court which committed the person to the mental hospital. Upon receiving such notice, the judge of the committing court shall within a reasonable length of time impanel a jury to determine whether the person is sane or insane. If the jury finds the person is sane, he shall be ordered released as soon as the judgment on the jury verdict becomes final. If the jury finds the person is insane, the judgment on the jury verdict shall order the person returned to the mental hospital

until adjudged to be sane at a subsequent jury trial in the committing court. When the person is so ordered returned to the mental hospital, the head of the mental hospital shall not again notify the committing court that he is of the opinion the person is sane for at least 180 days from the date the judgment of the committing court ordering him returned to the mental hospital on a previous jury finding of insanity has become final.

(c) When a person has been committed to a mental hospital upon a finding of insanity at the time of trial who has been acquitted of the alleged offense, and the person has been so committed for at least one year from the date of the original order so committing the person, and the head of the mental hospital to which he is committed fails or refuses to notify the court which committed the person to the mental hospital that he is of the opinion that the person is sane, then the person so committed may seek a post-commitment determination of his sanity by submitting a written request to the head of the mental hospital to which the person is committed requesting a determination of his sanity by the committing court.

Upon receipt of such a request, the head of the mental hospital shall, provided the person has been committed for at least one year from the date of the original order committing the person to the mental hospital, immediately cause the person to be examined by one or more staff physicians, and shall then immediately certify to the committing court the person's written request, the reports and findings of any examining physicians, and his own findings, if any.

Upon receipt from the head of the mental hospital of the person's written request and accompanying papers certified to the committing court, the judge of the committing court shall immediately cause the same to be filed with the clerk of the committing court and the judge shall examine such written request and accompanying papers to determine if they reflect probable merit. In the event the judge of the committing court does not believe that the written request and accompanying papers reflect probable merit, the judge shall enter an order denying the person's request, which order shall be appealable to determine whether there was an abuse of discretion in denying the person's request. The committing court may, at its discretion, appoint disinterested qualified experts to examine the person as to the person's mental condition and requirements for hospitalization, in a mental hospital, to report their findings to the committing court, and to testify thereto, and the committing court may, at its discretion, direct the hospital to forward to the court any hospital records pertaining to such person.

If the person's request, accompanying papers and other records or reports, reflect probable merit, the judge of the committing court shall within a reasonable length of time impanel a jury to determine whether the person is sane or insane. If the jury finds the person sane, he shall be ordered released as soon as the judgment on the jury verdict becomes final. If the jury finds the person is insane the judgment of the jury verdict shall order the person returned to the mental hospital until adjudged to be sane at a subsequent jury trial in the committing court. When a person is so ordered returned to the mental hospital, the person shall not again be permitted to request a post-commitment determination of his sanity for at least one year from the date the judgment of the committing court ordering him returned to the mental hospital on a previous jury finding of insanity has become final.

    ·    ·    ·    ·    ·

*Commitment to state school for the mentally retarded*

Sec. 11. If at any time a jury or a court finds a defendant to be insane and finds that he requires commitment to a mental hospital or mental institution, and if there has been competent testimony that such defendant is a mentally retarded person, then the court may, in its discretion, in lieu of committing him to a mental hospital or mental institution, commit him to a state school for the mentally retarded. If the crime of which the defendant was accused involved an act of physical violence against the person then such commitment shall be to a state school for the mentally retarded designated by the Texas Department of Mental Health and Mental Retardation as having the capability to provide maximum security. In the event of a commitment to a state school for the mental retarded, the head of the school shall have the same rights, powers, and duties as are conferred by this Article upon the heads of mental hospitals or mental institutions, and all the other provisions of this Article shall apply to the commitment. In this section, the term "mentally retarded person" means any person other than a mentally disordered person whose mental deficit requires him to have special training, education, supervision, treatment, care, or control.

Applicable portions of Tex. Mental Health Code art. 5547 (1958) are as follows:

Art. 5547–40. *Prerequisite to commitment*

No Petition for the indefinite commitment of a person to a mental hospital may be filed unless he has been under observation and/or treatment in a mental hospital for at least sixty (60) days pursuant to an Order

By the terms of Art. 46.02, a defendant may have the issue of present sanity tried in advance of the trial upon written request. Alternatively, during the trial on the merits, the court must hear evidence on the issue of present sanity on written request therefore, accompanied by a request for mistrial by reason of present insanity. The standard which must be used by the jury to determine present sanity is whether or not the defendant is presently incapable of making a rational defense.

If the jury finds the defendant presently insane and there has been competent medical or psychiatric testimony to of Temporary Hospitalization entered within the twelve (12) months immediately preceding the filing of the Petition.

**Art. 5547–42. Certificate required**

The Petition shall be accompanied by a Certificate of Medical Examination for Mental Illness by a physician who has examined the proposed patient within the fifteen (15) days immediately preceding the filing of the Petition, stating the opinion of the examining physician that the proposed patient is mentally ill and requires hospitalization in a mental hospital.

**Art. 5547–43. Hearing set; attorney appointed**

When a Petition and the required Certificate of Medical Examination for Mental Illness are filed, the county judge shall set a date for a hearing to be held within thirty (30) days of the filing of the Petition, and shall appoint an attorney ad litem to represent the proposed patient.

**Art. 5547–45. Waiver of trial by jury**

Waiver of trial by jury shall be in writing under oath and may be signed and filed at any time subsequent to service of the Petition and Notice of Hearing upon the proposed patient. The waiver of trial by jury shall be signed and sworn to by the proposed patient, or his next of kin, and by the attorney ad litem appointed to represent the proposed patient.

**Art. 5547–48. Trial by jury**

The proposed patient shall not be denied the right to trial by jury. A jury shall determine the issues in the case if no waiver of jury trial is filed, or if jury trial is demanded by the proposed patient or his attorney at any time prior to the termination of the hearing, whether or not a waiver has been filed. The jury shall be summoned and impaneled in the same manner as in other civil cases in the county court.

**Art. 5547–50. Medical testimony required**

No person shall be indefinitely committed to a mental hospital except upon the basis of competent medical or psychiatric testimony.

**Art. 5547–51. Issues; findings**

(a) The court or the jury, as the case may be, shall determine

(1) whether the proposed patient is mentally ill, and if so

(2) whether he requires hospitalization in a mental hospital for his own welfare and protection or the protection of others, and if so

(3) whether he is mentally incompetent.

**Art. 5547–52. Order upon hearing**

(a) If the court or the jury, as the case may be, finds that the proposed patient is not mentally ill or that he does not require hospitalization in a mental hospital for his own welfare and protection or the protection of others, the court shall enter an order denying the Petition and discharging the proposed patient.

(b) If the court or the jury, as the case may be, finds that the proposed patient is mentally ill and requires hospitalization in a mental hospital for his own welfare and protection or the protection of others, the court shall order that the mentally ill person be committed as a patient to a mental hospital for an indefinite period.

**Art. 5547–69. Persons charged with criminal offense**

The sections of this Code concerning the discharge, furlough and transfer of a patient are not applicable to a person charged with a criminal offense who is admitted in accordance with Acts, Forty-fifth Leglislature, Regular Session, 1937, Chapter 466 (compiled as Article 932a, Code of Criminal Procedure (Vernon's 1948)).

**Art. 5547–80. Discharge of patients**

(a) The head of a mental hospital may at any time discharge a patient if he determines after examination that the patient no longer requires hospitalization.

(b) The head of a mental hospital may at any time discharge a patient on furlough, and shall discharge a patient who has been on furlough status for a continuous period of eighteen (18) months.

(c) The head of a mental hospital may discharge a non-resident patient who has been absent without authority for a continuous period of thirty (30) days.

(d) Upon the discharge of a patient, the head of the mental hospital shall prepare a Certificate of Discharge stating the basis therefor. The Certificate of Discharge shall be filed with the committing court, if any, and a copy thereof delivered or mailed to the patient. Acts 1957, 55th Leg., p. 505, ch. 243, § 80.

that effect, the jury then considers whether or not the defendant requires hospitalization in a mental hospital for his own welfare and protection or the protection of others. Where present insanity is found, no consideration on the merits can be made; further deliberations are confined to the need for commitment (as described above), and whether or not the defendant was sane or insane at the time of the alleged offense. It is apparent from the wording of the statute that a determination of present insanity must be followed by a determination of past sanity at the time of the alleged offense if any competent evidence is introduced by the defendant in reference to his past sanity. The choice as to whether or not to bring up the matter of past sanity as a defense is entirely that of the defendant, and the burden is on him to prove his insanity at the time of the offense by a preponderance of the evidence. Burton v. State, 471 S.W.2d 817 (Tex.Cr.App.1971). In deliberating past sanity, the usual standard for responsibility for criminal acts is followed—the ability to know right from wrong and the nature of one's acts at the time of the offense. Wilkerson v. State, 423 S.W.2d 311 (Tex.Cr.App. 1968). If the defendant is found to have been insane at the time of the offense, he stands acquitted of the crime for which he was charged, and is in no sense a person charged with a crime.

Where a defendant is found insane at the time of trial and insane at the time of the offense (thereby becoming a member of the class of the "insane insane")[3] and a determination is made that the former defendant (now an acquittee) is in need of hospitalization, he is confined to Rusk State Mental Hospital.[4] After confinement, the head of the hospital may at any time notify the committing court that the acquittee is now sane. No standard is set out as a prerequisite for release other than present sanity. A jury is impaneled if the judge finds that the request has merit in order to decide the patient's present sanity, and if he is found sane, he is released. If found insane, he must be returned to Rusk for at least 180 days before another recommendation for release may be made. The acquittee, after a year of confinement, and each year thereafter, may initiate a judicial hearing for a sanity determination independent of the head of the hospital.

One portion of the statute which affords additional rights to those held to be incompetent to stand trial is Section 11. It provides that where a defendant is found to be insane and in need of hospitalization, where there is competent medical testimony that such person is a mentally retarded person, the court may commit him to a state school for the mentally retarded. The other provisions of the statute then apply.

By contrast, the Texas Mental Health Code, Article 5547, provides for the following actions in order to indefinitely commit a person civilly. After a 60 day observation period, any adult person may file a petition alleging that the patient is mentally ill and requires hospitalization in a mental hospital for his own welfare and protection or the protection of others. This petition must be accompanied by a certificate of a doctor who concurs in this conclusion. A hearing is set, and an attorney must be appointed for the person whose sanity is being questioned. A jury trial on the issue of sanity may be waived by the patient or his next of kin, and the attorney.

At the hearing itself, the proposed patient need not be present, but at least two physicians must testify at the hearing. Certain findings must be made be-

---

3. This term was used by Petitioner in his briefs and oral argument, and is a good shorthand term for describing those found to be insane at the time of the offense and insane at the time of trial.

4. Rusk is the only state mental hospital where criminally committed persons are kept.

fore the proposed patient may be committed. They are:

1. Whether the proposed patient is mentally ill;

2. Whether he requires hospitalization in a mental hospital for his own welfare and protection or the protection of others, and if so;

3. Whether he is mentally incompetent.

An order for commitment will issue if affirmative answers to both (1) and (2) are found. The incompetence finding is not made specifically relevant for commitment. There is a right of appeal from orders of indefinite commitment.

An examination is required for a person so committed every six months, and the head of the mental hospital may at any time discharge a patient when he feels the patient no longer needs hospitalization. There is no need for a jury hearing.

By specific provision in the Mental Health Code, rules for discharge, furlough, and transfer are made not applicable to a person committed under the Criminal Code of Procedure. Petitioner alleges that his confinement under Art. 46.02 violates both the Equal Protection and Due Process of Law guarantees of the Constitution, and asks for various individual relief on that basis. He also brings a class action on behalf of all persons who have been committed under Art. 46.02 as the "insane insane" and who are currently being treated at Rusk State Mental Hospital under the care of Respondent, Dr. Lex Neill. A denial of Equal Protection of the laws on behalf of the class is alleged, and a three-judge court requested to consider the constitutionality of the standards of Art. 46.02 in so far as they provide for confinement, treatment, and release of those committed under that article. An injunction against respondent and his agents from enforcement of the statute is asked.

We agree with petitioner that the provisions of Article 46.02 deny petitioner Equal Protection of the Law in so far as treatment and release are concerned, but as to provisions relating to commitment we disagree.

## COMMITMENT

Discussing first the standards providing for commitment it should be pointed out that Equal Protection does not require that all persons be dealt with identically. What it does require is that any distinctions which are made must have relevance to the purpose for which the classification is made. Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). Further, not all situations requiring Due Process require the same procedural safeguards. As pointed out in Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972), the state has a reasonable interest in releasing only those whom the state considers not potentially dangerous to society. Many courts have recently used this weighing process between state and individual interests in the civil and criminal commitment area to justify differences in procedures. While prior alleged criminal conduct cannot justify denial of procedural safeguards in determining mental illness, Cameron v. Mullen, 128 U.S.App.D.C. 235, 387 F.2d 193 (1967), where a person chooses to bring up the issue of past sanity, procedural differences have often been justified. Lindner v. Peterson, 324 F.Supp. 1261, 1264 (W.D.Miss.W.D.1971); Chase v. Kearns, 278 A.2d 129, 132 (Me.1971); People v. Lally, 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966). *See generally* 50 A.L.R.3rd 144 (1973).

While the criminally committed person must be incapable of making a rational defense and in need of protective custody, the civilly committed person must be found to be mentally ill and in need of protective custody. Under the provisions of Art. 46.02, the defendant himself may put his present and past sanity in issue, and this is in fact what Reynolds did. As to past insanity, once the defendant brings it up as an issue, he then proceeds to prove it himself. In

proving his own recent past mental insanity to relieve himself from the burden of an indictment, the defendant can be said to be voluntarily placing himself in a class which can be treated differently persuant to a legitimate state classification. State ex rel. Schopf v. Schubert, 45 Wis.2d 644, 173 N.W.2d 673, 677 (1970). What the defendant essentially does, then, is to provide the court with evidence of his own recent past mental illness. This serves to make the necessity for a finding of mental illness for those criminally committed moot, and the close equivalence between criminal and civil commitment standards can be seen.

In some instances, the criminally committed person actually receives greater procedural safeguards than does the civilly committed person. Commitment procedures in civil cases may be started by any adult person who has an alleged interest in having the commitment take place, Tex. Mental Health Code Ann. art. 5547–41 (1958), while in a criminal commitment all initiatives are taken either by the defendant or by the court. Tex. Code Crim.Proc. art. 46.02 (Supp.1974). The criminally committed person has a right to have his present sanity tried by a jury, and while a civilly committed person has the same right, it can be waived for him by next of kin. Tex. Mental Health Code Ann. art. 5547–45 (1958). When the element of substantial mental impairment is seen in the light of being proven by the defendant himself, the criminally committed is en-titled to three prerequisites before commitment, while for the civilly committed there are only two. All reasonable procedural safeguards, such as absolute right to have counsel, are also afforded the criminally committed. The guarantees and rights afforded the criminally committed certainly do not suffer when compared to those afforded the civilly committed in so far as commitment is concerned.. When the combination of events leading to criminal commitment of the "insane insane" is viewed as a whole (sufficient probable cause for an indictment to issue against the former defendant, recent adjudication of past insanity, and the necessary jury findings), the court finds that the defendant is in fact treated with due regard for Equal Protection, under substantially the same commitment standards for those civilly committed, and where differences may exist, they are reasonably related to legitimate state interests.

## TREATMENT

■ Petitioner in his brief lists a number of instances where criminally and civilly committed persons receive different treatment after confinement.[1] One of the differences, the requirement involving approval of the committing court for any transfer to take place from Rusk where transfer of a criminally committed person is involved, is mandated by statute. Another difference, the restriction on furlough provileges, comes from an opinion of the Texas State Attorney General. The others ap-

---

1. The differences listed are as follows:
   A. A civilly committed person can be transferred from one hospital to another on the recommendation of his physician—Tex. Mental Health Code Ann. arts. 5547–73, 5547–74 (1958). A criminally committed person cannot be transferred from Rusk even if it is medically advisable, unless the permission of the committing court is obtained. Tex.Code Crim. Proc.Ann. art. 46.02(2)(i) (Supp.1974).
   B. Under Tex. Mental Health Code Ann. art. 5547–79 (1958), civil committes may be furloughed to their families. Even if it is deemed medically advisable criminally committed persons are not allowed such a privilege. Op.Att'y Gen. C–560 (1965).
   C. Civilly committed persons are allowed to stroll around the hospital grounds when it is deemed medically advisable. Criminally committed persons are not allowed that privilege even it if is deemed medically advisable.
   D. No persons who have been criminally committed are allowed to enroll in rehabilitation or educational programs of correspondence schools. Civilly committed persons are allowed to do so.
   E. Those civilly committed are allowed much broader visitation and mail privileges than are persons criminally committed.

pear to be rules developed in line with the differing treatment allowed and even encouraged by the wording of the statutes, particularly Art. 5547–69 of the Mental Health Code.[2] As to treatment in general, the Mental Health Code, Art. 5547–70, provides that patients committed under the civil commitment procedures shall receive care and treatment in accordance with the highest medical practice, and further that accepted psychiatric treatment and therapy should be provided. The criminal statutes provide no standards or requirements for treatment, and the jury which determines the inability to stand trial and need for protective custody of the defendant provides no recommendations or guidelines on what the committed person should be treated for or what goals his treatment should be oriented towards.[3]

The court finds that for several reasons, the treatment afforded criminally committed persons does not measure up to Constitutional standards. Recent cases have followed the overwhelming professional psychiatric and juridical insistance that treatment of some sort must be afforded those confined for treatment of mental illness.[4] Further, with a view to the different treatment allowed for civilly and criminally committed persons which continues after a point where any reasonable basis for different treatment exists, there is a denial of equal protection to those criminally committed.

■ The nature of the commitment of a person confined under Art. 46.02,

while certainly not being civil, is still difficult to classify as criminal in a strict sense. The person has been acquitted of criminal responsibility, and is in no sense a person charged with a crime, by the terms of the statute itself.[5] The confinement may be termed to have taken place under the state's police, depending on the exact basis for the finding of the jury on the matter of need for commitment. But what is important is not the exact basis for commitment, but rather what the ultimate goal of the confinement ought to be, i. e., the rehabilitation of the individual as a functioning and productive member of society. The purpose of involuntary criminal commitment should be treatment, not punishment. Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451, 452 (1966). The court there stated that "[a]bsent treatment, the hospital is 'transform(ed) . . . into a penitentiary where one could be held indefinitely for no convicted offense . . .'", quoting Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 281 F.2d 943, 950 (1960). This would certainly be a situation most contrary to basic constitutional principles.

While we are not here dealing with an absence of treatment, the court is faced with a situation where the circumstances under which a person is confined are not suitable to the ends of the confinement. Not only does Art. 46.02 itself lack any mandate or standards for treatment; a comparison with treatment afforded whose who are civilly

---

2. That portion of the Texas Mental Health Code reads:
   "The sections of this Code concerning the discharge, furlough and transfer of a patient are not applicable to a person charged with a criminal offense who is admitted in accordance with Acts, Forty-fifth Legislature, Regular Session, 1937, Chapter 466 (compiled as Article 932a, Code of Criminal Procedure)" (Now Tex. Code Crim.Proc. art. 46.02 (Supp.1974).

3. Under Tex.Code Crim.Proc. art. 46.02(2)(d)(1) (Supp.1974) a person found to be of the "insane insane" class is confined in a mental hospital "until he becomes sane".

4. See Donaldson v. O'Connor, 493 F.2d 507 (5th Cir. 1974) ; Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966) ; Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 281 F.2d 943 (1960) ; Wyatt v. Stickney, 325 F.Supp. 781 (M.D.Ala.1971), (appeal docekted sub nom. Wyatt v. Aderholt, No. 72–2634, 5th Cir. Aug. 1, 1972) ; Nason v. Superintendent, 353 Mass. 604, 233 N.E.2d 908 (1968). See also Developments in the Law—Civil Commitment of the Mentally Ill, 87 Harv.L.Rev. 1190, 1316–44 (1974).

5. Tex.Code Crim.Proc. 46.02 § 2(c)(3) (Supp.1974).

committed shows that other serious failures exist.

The unjustified restriction on transfer provided for in 46.02, and the other striking differences in treatment provided for criminally and civilly committed persons create a denial of due process and equal protection in that treatment is unreasonably withheld from one group of persons whose treatment goals are the same as another group which is allowed treatment and rehabilitative help. There is no aspect of punishment in either commitment, and it hardly seems possible that the state can justify failing to help the criminally committed reach release goals.

■ Such a failure to provide assistance in achieving release goals in essence may provide for commitment of an indefinite duration for those criminally committed. As stated in Jackson v. Indiana, infra, 406 U.S. at 738, 92 S.Ct. at 1858, where no inquiry was made into whether or not the state could even help a criminally committed person achieve the set release criteria,

> "At the least, due process requires that the nature . . . of commitment bear some reasonable relation to the purpose for which the individual is committed."

Where there is a failure of sufficient affirmative action by the state to help a committed person attain the standard set for release, under circumstances where the person is one who is not convicted of a crime, such lack of treatment is unconstitutional. At least to the extent that civilly committed persons are afforded treatment helpful to release goals, and such treatment is withheld from criminally committed persons, there exists a denial of equal protection absent a compelling state interest in withholding the treatment.

### RELEASE

■ The differences in the release procedures for civilly and criminally committed persons have previously been pointed out. Briefly, under Art. 46.02, a confined person may not be released without approval of the committing court, and a jury determination that the committed person is no longer in need of protective confinement is necessary for release. Application for release can only come at 180 day intervals if from the head of the hospital, and one year intervals if from the patient himself. A civilly committed person, under the Mental Health Code, may be released at any time the head of the hospital feels the patient no longer needs hospitalization, with no standard set for release. The court finds that the reasonable state interests which justify differences in commitment standards and procedures do not carry over so as to justify the differing release standards and procedures.

■ In viewing the reasoning of the Supreme Court in Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966) and Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), it can be seen that there is an increasing concern for the criminally confined person who may not be able to benefit from further confinement, but who cannot meet the stricter standard of release generally required under criminal release statutes. Although the state may have an interest at the time of commitment in assuring that one who has recently plead and proved his insanity is not still insane or dangerous, and thereby commit him on different standards than those used for civil commitment, this state interest dissolves once it may be determined that such person is not dangerous. The state interest becomes even more tenuous when it becomes evident that the confined person cannot benefit from further confinement. Jackson v. Indiana, *supra*; Baxstrom v. Herold, supra; Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956).

■ Where a civilly committed person could be instantly released under many circumstances, the criminally committed person would still have to prove his sanity before a jury. As shown in Hefley v. State, 480 S.W.2d 810, (Ft.

Worth—Civ.App.1972), even where several qualified medical personnel believe a former defendant to be suitable for release, he may be frustrated in gaining his liberty by a jury which can believe other evidence. Where the state is willing to allow the head of a mental hospital to decide the issue of release for a civilly committed person, it must not impose unreasonable burdens for release on a person who has been criminally committed. Any distinctions which were relevant for the purposes of commitment, such as the proving by the former defendant of his recent past insanity, have disappeared, and the differences which exist in release standards and procedures must be adjusted to reflect the equal footing on which civilly committed persons and the "insane insane" stand after those differences have disappeared.

The state of Texas is hereby enjoined from initiating or continuing treatment promulgated or mandated under Art. 46.02 of the Texas Code of Criminal Procedure. The state is further enjoined from using the release standards set out under Art. 46.02.