STATE, Appellant, v. STATE FAIR PARK, Inc., a/k/a MUSKE-
GO BEACH AMUSEMENT PARK, Respondent.

*October 29—November 26, 1963.*

For the appellant the cause was argued by *Roy G. Mita,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general..

For the respondent there was a brief by *Hippenmeyer & Reilly* of Waukesha, and oral argument by *Richard S. Hippenmeyer.*

BROWN, C. J.   Respondent owns and operates a permanent amusement park known as "Muskego Beach," located at Muskego, Waukesha county, Wisconsin. From 1953 through 1961, respondent operated several amusement "rides" at the park but did not obtain a showman's license for any of the "rides" during that period.

Appellant brought the present action pursuant to sec. 129.14, Stats., upon nine causes of action, one for each year, to recover from respondent the price of a license for each ride for each of the nine years, totaling $3,400.

Sec. 129.14 (1), Stats., provides:

"SHOWMEN'S STATE LICENSES.   (1) Every owner, manager or agent of a caravan, circus or menagerie, before he shall be allowed to exhibit the same in this state, shall procure a license as a public showman by making application in writing to the department, which application shall state in detail the manner in which he intends to travel and the nature and character of his exhibition, and shall pay into the treasury therefor the sum of one hundred dollars; and every owner or manager of a so-called side show, traveling vaudeville, Ferris wheel, merry-go-round, ocean wave, whip, seaplane, caterpillar, butterfly, or similar device, or so-called 'rides' operated for amusement, or transient shooting gallery, and,

except at a regular theater or vaudeville house, every person exhibiting for money any trained animal, wild animal or any object of curiosity shall procure a state license as a public showman and pay therefor twenty dollars; provided, that if such person, owner, manager or agent shall state in the application that he applies for the license solely for the purpose of exhibiting at fairs, expositions, exhibits or carnivals held on the grounds and under the direction of a society, association or board receiving state aid, the license shall be granted upon the payment of the following fees: For a caravan, circus or menagerie, twenty-five dollars; for a side show, traveling vaudeville, the exhibit of any trained animal, wild animal, or any object of curiosity, ten dollars; for any Ferris wheel, merry-go-round, ocean wave, whip, seaplane, caterpillar, butterfly or similar device, or so-called 'rides' operated for amusement, or transient shooting gallery, the license shall be granted without charge. No such license shall be issued until the department shall have ascertained from the industrial commission that the applicant has complied with the provisions of subsection (2) of section 102.28 of the statutes. This section shall not apply to a concessionaire or lessee of the state on state property where by reason of contract or otherwise the state would be obligated to furnish the license."

The principal ground of the demurrer is that the complaint does not state a cause of action. The trial court concluded that the statute was too vague and indefinite in its provisions to meet the test of constitutionality in that it was uncertain to what showmen the statute applied, the number of "rides" to be included by one license, and the length of time for which the license would be effective.

The supreme court should not and will not consider the constitutionality of an act of the legislature unless a decision on that ground is essential to the determination of the question before the court. *Smith v. Journal Co.* (1955), 271 Wis. 384, 73 N. W. (2d) 429. "It is elementary that a court ordinarily will not pass upon the constitutionality of a statute in a situation in which the case before it may be decided upon

another ground." *Will of Bowman* (1957), 2 Wis. (2d) 404, 407, 86 N. W. (2d) 442.

Although the learned trial court reached its decision upon the theory that sec. 129.14, Stats., was unconstitutional, we do not consider that question because the controversy can be determined on another ground, as follows:

The proposed causes of action in the complaint are based on sec. 129.14, Stats., for the recovery of the amount of the license fee for each mechanical ride operated by defendant from 1953 through 1961. These rides are located in and are part of what is known as an amusement park which defendant owns, and the park has a fixed situs at Muskego Beach (which is not in a city) in Waukesha county. Sec. 59.07 (18) and sec. 175.20 (1) subject amusement parks located outside of cities to regulation by the county in which the park is situated, and empowers the county to impose license fees for the park's operation. The legislature may well believe that regulation by the county is adequate for the supervision and policing of amusements having fixed locations within the county.

It may just as reasonably believe that county regulation is insufficient to cope with problems attending ambulatory shows and showmen who are here today in a certain county and gone tomorrow. Consequently, the legislature may find it desirable to supplement or supplant local control of them by state regulation. Recognizing these differences the legislature enacted different statutes appropriate to the differences between fixed and mobile forms of entertainment.

The legislative history of sec. 129.14, Stats., leads to the conviction that its purpose was to require a state license from only the traveling forms of entertainment.

In 1870, public showmen for the first time were required to obtain a license; hawkers and peddlers earlier had been required to obtain one. By ch. 72, the Laws of 1870, the

legislature re-established the rates of licenses for hawkers and peddlers and also provided:

"*Section 5.* Every owner, manager or agent of any caravan, circus or menagerie, before he shall be allowed to exhibit the same in this state, shall procure a state license as a public showman, in the manner hereinbefore provided for hawkers and peddlers, and shall pay into the state treasury therefor, the sum of one hundred dollars.

"*Section 6.* It shall be the duty of the secretary of state, upon the payment of his fees, to grant . . . a license . . . authorizing such applicant to travel and prosecute business in the manner stated . . . for the term of one year from the date of the license: . . ."

From the terms of these two provisions, which are the predecessors of present secs. 129.14 and 129.04, Stats., respectively, the intent of the legislature was that the duration of the license for a showman, as well as for a hawker or peddler, was one year. The showman's license was procured under those sections in the same manner as was the hawker's and peddler's licenses.

These statutory provisions appeared in secs. 1574 and 1575, respectively, of the then ch. 67 of the 1878 R. S.; there was no alteration of the term of the license. Provisions of ch. 67 relating to peddlers and transient merchants were held unconstitutional because of invalid discriminations between citizens in *State v. Whitcom* (1904), 122 Wis. 110, 99 N. W. 468. In order to eliminate the unconstitutional provisions the legislature in 1905 repealed ch. 67, reorganized, and re-created it. Ch. 490, Laws of 1905, Bill No. 497, A. The provisions relating to showman's license was renumbered sec. 1584 and appeared materially as present sec. 129.14 (1), Stats. However, the provision pertaining to the procedure by which showmen were to obtain a license in the manner provided for hawkers and peddlers was deleted; in its stead was a provision, which presently exists, that in the

application for a license the showmen were to present in detail where they intended to travel and the nature and character of the exhibitions.

Later, after some amendments not material here, sec. 1584 was renumbered sec. 129.14, Stats.; the history of sec. 129.14 shows other amendments not material here until the statute appears as it does now.

The appellant lays stress on the wording of sec. 129.14, Stats., which includes an adjective denoting impermanence in "traveling vaudeville," and "transient shooting gallery" and it urges that the omission of any such adjective in the case of "rides" although permanently located are subject to the license fee imposed by the statute.

In the light of the history of the legislation and its purpose we reach a contrary conclusion. The sideshow, ferris wheel, and the other mechanical amusement devices, including the "rides," normally were traveling entertainments, often accompanying circuses and carnivals, where they rented a vacant lot for a brief stay. When uncertainty might result because the entertainment was of a sort which might be either fixed or permanent the legislature made it clear that *only* the traveling variety was subject to the state's licensing statute, *e.g.,* "traveling" vaudeville and "transient" shooting gallery; and an animal act, museum, or freak show which normally travels was excepted from the requirements of procuring a license if the exhibition was given in a regular theater or vaudeville house.

The intent of the legislature in enacting sec. 129.14 (1), Stats., is further demonstrated by the requirement that the owner or manager of so-called "rides," ". . . shall procure a state license as a public showman . . ." and to procure such a license his application ". . . shall state in detail the manner in which he intends to travel . . ." This is persua-

sive to us that the owner and manager who does not intend to travel and whose entertainment devices have a permanent location are not within the contemplation of this statute.

Appellant insists that the doctrine of practical construction applies in interpreting the statute to include permanent amusement parks because it was so construed by the departments charged with its administration. The record contains a report of the motor vehicle department which lists showmen to whom licenses were issued for rides and shows from 1946 through 1960.

The doctrine of practical construction is applied in interpreting a doubtful, ambiguous, or uncertain statute. *State ex rel. Allis v. Wiesner* (1925), 187 Wis. 384, 398, 399, 204 N. W. 589; *Estate of Smith* (1915), 161 Wis. 588, 590, 155 N. W. 109. By this doctrine the application of a statute over a period of time by a department charged with its administration is given weight in construing the meaning of the terms of the statute. *State v. Fischer* (1962), 17 Wis. (2d) 141, 145, 146, 115 N. W. (2d) 553; *Wisconsin Axle Division v. Industrial Comm.* (1953), 263 Wis. 529, 537b, 57 N. W. (2d) 696, 60 N. W. (2d) 383. The record in the present case, however, does not show a consistent application of the statute to amusement parks. The report of the motor vehicle department contained in the record does not indicate that any of the showmen listed were showmen operating amusement parks. The entire record shows only that respondent purchased seven licenses for rides in 1946, but has not purchased any since. The present action was not brought against respondent until 1961, about fifteen years since it purchased its last licenses.

Therefore, based upon the record, if the doctrine of practical construction is applicable at all to the present case it favors a construction of the statute that excludes amusement

parks. There is a demonstrated lack of its consistent application to that form of amusement over at least the preceding fifteen years.

We conclude, therefore, that sec. 129.14, Stats., does not require respondent, a nontraveling showman operating an amusement park at a fixed location, to obtain an annual state license as a public showman for each ride in its amusement park. Thus, the complaint does not state a cause of action against respondent. The demurrer to the complaint was properly sustained, and the judgment dismissing the action was correct.

*By the Court.*—Order affirmed; judgment affirmed.