STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas R. FIELD, Defendant-Appellant.

Supreme Court

*No. 82–1330–CR. Argued February 2, 1984.— Decided May 2, 1984.*

(Also reported in 347 N.W.2d 365.)

For the defendant-appellant there was a brief by *William M. Coffey* and *Coffey, Coffey & Geraghty,* Milwaukee, and oral argument by *William M. Coffey.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM A. BABLITCH, J.  Thomas Field was found guilty of first-degree murder after the first phase of his trial, and not guilty by reason of mental disease after the second phase.  He appeals from a commitment order which was issued after the third phase at which he was found to be presently mentally ill and a danger to others.  Field argues that because the state produced

no evidence concerning his present mental condition during the third phase of the trial but instead relied solely on the evidence produced at the prior two phases, he was denied his constitutional rights to due process and equal protection of the laws. We conclude that the commitment order may stand regardless of any error that might have occurred during the third phase of the trial because, despite a previous holding to the contrary, a third phase of the trial following a finding of not guilty by reason of mental disease or defect is not constitutionally required.

The issue for review is: notwithstanding our prior holding in *State ex rel. Kovach v. Schubert,* 64 Wis. 2d 612, 219 N.W.2d 341 (1974), does sec. 971.17(1), Stats. 1981–82, which allows a defendant found not guilty by reason of mental disease or defect to automatically be committed, violate the due process or equal protection clauses of the fourteenth amendment to the United States Constitution, or Art. I, sec. 1 of the Wisconsin Constitution?

We overrule our prior holding in *Kovach* that sec. 971.17(1), Stats., violates the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. We hold that sec. 971.17(1) does not violate the due process or equal protection clauses of the fourteenth amendment, or Art. I, sec. 1 of the Wisconsin Constitution. Because sec. 971.17(1) allows a defendant to be automatically committed after he or she is found not guilty by reason of mental disease or defect, we affirm the order of the circuit court.

On September 26, 1981, Field shot and killed Dorian Lavey at the home of Field's estranged wife. The Fields had been separated since June of 1981 after a divorce action had been filed. Mrs. Field had been dating Mr. Lavey since May, 1981.

The state issued a criminal complaint against Field, charging him with first-degree murder, contrary to sec. 940.01(1), Stats. Field made his initial appearance on September 28, 1981. On October 14, a preliminary hearing was held and Field was bound over for trial. Field appeared for arraignment on October 29, and entered a plea of not guilty, reserving the right to enter a special plea later. On November 16, Field appeared and entered a special plea of not guilty by reason of mental disease or defect. The matter was set for a trifurcated jury trial.

The "trifurcated criminal trial" was introduced in *Kovach*. The first portion of a trial following a plea of not guilty by reason of insanity is devoted to the question of guilt or innocence of the charge. If the defendant is found guilty, the second portion is to determine whether the defendant is not guilty by reason of mental disease or defect. If the defendant is so found, the third portion of the trial is to determine whether the defendant is presently suffering from mental illness and is in need of institutionalized treatment, that is, whether he is a danger to himself or others. *See State v. Gebarski*, 90 Wis. 2d 754, 769, 280 N.W.2d 672 (1979).

The first phase of the trial concluded on March 12, 1982, with the jury returning a verdict finding Field guilty of first-degree murder, contrary to sec. 940.01 (1), Stats. The second phase of the trial began on March 13, 1982, and ended with the return of a jury verdict finding Field not guilty by reason of mental disease. During the first two phases of the trial, Field and the state had presented testimony and evidence concerning Field's mental condition to and at the time he committed the crime. Prior to the verdict of not guilty by reason of mental disease, both parties had consented to a waiver of a jury trial for the third phase of the

trial if a third phase was needed. After the verdict, the third phase was set for a hearing on March 16, 1982.

At the March 16 hearing, the state offered no testimony or evidence concerning whether Field was presently suffering from mental illness and was dangerous. The state indicated that it was relying on the testimony and evidence adduced during the first and second phases of the trial to support its position that Field was presently suffering from a mental disease and was dangerous. The defense also offered no new testimony or evidence. Citing testimony presented during the first two phases, the trial court found that Field ". . . is presently mentally ill and possesses a potential of being dangerous to others." The court therefore ordered that Field be committed under sec. 971.17, Stats., to the Wisconsin Department of Health and Social Services for treatment at an appropriate institution. Field subsequently was committed to the Mental Health Institute—Winnebago.

Field appealed the trial court's order to the court of appeals, which certified the case to this court pursuant to sec. 809.61, Stats. We accepted the certification.

As noted above, after the jury returned the verdict finding Field not guilty by reason of mental disease, the trial court held a hearing to determine whether he was presently suffering from mental illness and was in need of institutionalized treatment. This "third phase" of the trial was conducted to comply with the requirements of *Kovach.*

Field argues that the trial court erred and denied him due process and equal protection of the laws by finding him presently mentally ill and dangerous following the verdict of not guilty by reason of mental disease without taking testimony at the third phase hearing concerning his present mental condition and dangerousness. He contends that it was the state's burden at that hearing to prove to a reasonable certainty by evidence that

is clear, satisfactory and convincing that he was presently mentally ill and in need of institutionalized treatment because he was presently a danger to others. Field asserts that the state did not meet this burden and the evidence was insufficient to support the trial court's finding.

The state argues that although there was no testimony or evidence presented at the third phase hearing concerning Field's present mental condition, there was sufficient evidence adduced during the first two phases to support the trial court's finding that Field was presently mentally ill and dangerous. However, the state additionally argues that in light of the recent United States Supreme Court decision in *Jones v. United States*, —— U.S. ——, 103 S. Ct. 3043 (1983), we should overrule *Kovach* and uphold the constitutionality of sec. 971.17 (1), Stats. 1981–82, which provides for automatic commitment upon a finding of not guilty by reason of mental disease or defect after the second phase of the trial.

Although in *Kovach* we held that the automatic commitment procedure of sec. 971.17, Stats. 1973, was unconstitutional, the legislature has not eliminated this procedure to conform to the holding of *Kovach*. Section 971.17(1), 1981–82, cited in full below,[1] still provides for automatic commitment following a finding of not guilty by reason of mental disease or defect after the second phase of the trial. Thus, there is currently no statutory requirement that after a defendant has been found not guilty by reason of mental disease or defect

[1] Section 971.17(1), Stats. 1981–82, provides:

"Legal effect of finding of not guilty because of mental disease or defect. (1) When a defendant is found not guilty by reason of mental disease or defect, the court shall order him to be committed to the department to be placed in an appropriate institution for custody, care and treatment until discharged as provided in this section."

and before he or she is committed, a hearing be held to determine whether the defendant is presently mentally ill and in need of institutionalized treatment.

Therefore, if the automatic commitment procedure of sec. 971.17(1), Stats., following the second phase satisfies constitutional requirements, Field could have been automatically committed under that provision, thereby eliminating the requirement of a third phase hearing and a finding of present mental illness and dangerousness prior to ordering his commitment under sec. 971.-17(1).

In *Kovach*, we overruled *State ex rel. Schopf v. Schubert*, 45 Wis. 2d 644, 173 N.W.2d 673 (1970), which held that sec. 957.11(3), Stats. 1967, providing for automatic commitment of persons found not guilty by reason of insanity, did not deny to such persons equal protection of the laws or due process. That statute is cited in full below.[2] In reaching the decision in *Kovach*, we reviewed United States Supreme Court and lower federal court cases involving differing procedures for persons civilly committed and those committed pursuant to other provisions, such as the Wisconsin Sex Crimes Act. The cases discussed in *Kovach* included *Jackson v. Indiana*, 406 U.S. 715 (1972), *Bolton v. Harris*, 395 F.2d 642 (D.C. Cir. 1968), and *Humphrey v. Cady*, 405 U.S. 504 (1972). None of those cases squarely addressed the issue before us in this case.

However, based on the analysis in those cases, we held in *Kovach* that the procedure under sec. 971.17, Stats. 1973, for the automatic commitment of a defend-

---

[2] Section 957.11(3), Stats. 1967, provided: "If found not guilty because insane or not guilty because feeble-minded, the defendant shall be committed to the central state hospital or to an institution designated by the state department of public welfare, there to be detained until discharged in accordance with law."

ant upon a finding of not guilty by reason of mental disease or defect denied the defendant equal protection, in violation of the fourteenth amendment to the United States Constitution. We concluded that following a finding of not guilty by reason of mental disease or defect, there should be another question submitted to the jury on whether the defendant is presently suffering from mental illness and is in need of institutionalized treatment. 64 Wis. 2d at 622.

We also held that the statutory automatic commitment procedure denied a defendant due process, contrary to the fourteenth amendment, because there was no provision for a hearing and finding of present insanity at the time of commitment. *See* 64 Wis. 2d at 622–23. We concluded that in order to satisfy due process, the finding of present mental illness should be made prior to ordering a defendant's commitment under sec. 971.17, Stats., and after a hearing on a defendant's present condition. 64 Wis. 2d at 623.

Following our decision in *Kovach,* however, the United States Supreme Court addressed the issue of the constitutionality of a commitment procedure whereby a defendant is automatically committed upon a finding of not guilty by reason of insanity. *Jones v. United States,* —— U.S. ——, 103 S. Ct. 3043 (1983). The state contends that *Jones* supports the conclusion that our decision in *Kovach* was based on an erroneous interpretation of what the United States Constitution requires. We agree.

In *Jones,* the defendant was found not guilty by reason of insanity, and was committed pursuant to a District of Columbia statute providing that:

"If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a

hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e)."

The defendant argued that he was denied due process because the judgment of not guilty by reason of insanity did not constitute a finding of present mental illness and dangerousness, and because it was established only by a preponderance of the evidence.[3] The defendant relied, in part, on *Addington v. Texas*, 441 U.S. 418 (1979), in which the United States Supreme Court held that the due process clause requires that in civil-commitment proceedings, the government must demonstrate by clear and convincing evidence that the individual is mentally ill and dangerous. 441 U.S. at 426–27. The defendant therefore asserted that his commitment should have been governed by the District of Columbia's civil-commitment procedures, under which an individual could be committed upon clear and convincing proof by the government that the person is mentally ill and likely to injure himself or others.

The Court in *Jones* noted that a verdict of not guilty by reason of insanity establishes two facts: first, that the defendant committed an act constituting a criminal offense; second, the defendant committed the act because of mental illness. The Court also noted that Con-

---

[3] In *Jones*, the Court noted that an equal protection argument to the effect that it was irrational for the government to deny the defendant a civil-commitment hearing at which the government bore the burden of proof by clear and convincing evidence duplicated the defendant's due process argument. The Court therefore indicated that if the due process clause does not require that an insanity acquittee be given the procedural safeguards provided in a civil-commitment hearing, then there is necessarily a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees. 103 S. Ct. at 3048, n. 10.

gress had determined that these findings constitute an adequate basis for hospitalizing the acquittee as a dangerous and mentally ill person. The Court concluded that it was not unreasonable or unconstitutional for Congress to make this determination. 103 S. Ct. at 3049.

In reaching this conclusion, the Court indicated that the fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act indicates dangerousness. The Court also concluded that it was reasonable for Congress to determine that the insanity acquittal supports an inference of continuing mental illness. The Court therefore held that ". . . a finding of not guilty by reason of insanity is a sufficient foundation for commitment of an insanity acquittee for the purposes of treatment and the protection of society." 103 S. Ct. at 3050.

The Court additionally rejected the defendant's argument that his commitment was unconstitutional because proof of his insanity was based on only a preponderance of the evidence as compared to *Addington's* civil-commitment requirement of proof by clear and convincing evidence. The Court recognized important differences between civil-commitment candidates and the class of insanity acquittees that justify imposing different standards of proof. In *Addington,* the Court was particularly concerned that persons would be confined because of " 'some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable.' " 103 S. Ct. at 3051, quoting *Addington,* 441 U.S. at 426–27. However, as the Court noted in *Jones,* ". . . the proof that [a defendant] committed a criminal act as a result of mental illness eliminates the risk that he is being committed for mere 'idiosyncratic behavior.' " 103 S. Ct. at 3051, quoting

*Addington,* 441 U.S. at 427. The Court also recognized that "[A] criminal act by definition is not 'within a range of conduct that is generally acceptable.'" 103 S. Ct. at 3051, quoting *Id.* at 426–27. The Court therefore held that:

". . . when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." 103 S. Ct. at 3052.

Based on the decision in *Jones,* we conclude, contrary to our decision in *Kovach,* that sec. 971.17 (1), Stats., which allows for automatic commitment without a determination of the defendant's present mental condition, does not violate the due process clause of the fourteenth amendment. As the Court noted in *Jones,* the fact that a defendant has been found beyond a reasonable doubt to have committed a criminal act is indicative of dangerousness. In addition, in *Jones,* the Court concluded that Congress' determination that an insanity acquittal supports an inference of continuing mental illness was reasonable, stating, "It comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment." 103 S. Ct. at 3050. Similarly, it was reasonable for the Wisconsin legislature to determine that a finding of not guilty by mental disease or defect supports an inference that a likelihood exists that the defendant continues to be mentally ill and will therefore need treatment.

In addition, in *Jones* the Court recognized that a committed acquittee ". . . is entitled to release when he has recovered his sanity *or* is no longer dangerous." 103

S. Ct. at 3051. (Emphasis added.) The Court noted that under the District of Columbia's provisions relating to the committment of an insanity acquittee, the person committed would be entitled to a hearing within 50 days of the commitment, thereby ensuring that the person has an opportunity to obtain release if he or she has recovered.

Similarly, in this case, once a defendant is committed pursuant to sec. 971.17(1), Stats., sec. 971.17(2) affords the defendant the right to petition for a reexamination of the defendant's mental condition under the procedures outlined in sec. 51.20(16) of the Mental Health Act. Section 971.17(2) also provides that the defendant must be released if the court is satisfied that the defendant may be safely released without danger to himself or to others. Section 51.20(16)(c) states that if a hearing has been held with respect to the individual's commitment within thirty days of the filing of a petition for reexamination, no hearing will be held on the petition. If such a hearing has not been held within thirty days but has been held within 120 days of the filing of the petition, the court has the discretion to hold a hearing. If a hearing has not been held within 120 days of the filing, a hearing must be held on the petition within thirty days of receipt of the petition. In addition, under sec. 51.20(16)(i), a defendant may receive subsequent reexaminations at any time in the court's discretion, and such reexaminations may be compelled after 120 days of the preceding examination. That subsection also provides that all petitions for reexamination must be heard within thirty days of their receipt by the court. Thus, sec. 971.17(2) ensures that a defendant automatically committed pursuant to sec. 971.17(1) may be reexamined and may obtain release if he or she is not presently dangerous. *See Gebarski.*

The question of whether the time frame of 120 days for a mandatory hearing under secs. 971.17(2) and 51.-20(16)(c), Stats., meets constitutional requirements is not before us. In *Jones,* the Supreme Court noted that under the District of Columbia's provisions governing release of one committed following an insanity acquittal, that person would be entitled to a hearing within fifty days of the commitment, and would therefore have an opportunity to obtain release if he or she has recovered. The Court emphasized, however, that it was not deciding whether the District of Columbia's procedures for release were constitutional. *See* 103 S. Ct. at 3049, n. 11. Similarly, any issues concerning the constitutionality of the reexamination and release procedures under sec. 971.17(2), including the 120-day period set forth in sec. 51.20(16)(c), are not raised in this case and we do not decide them.

We additionally note that automatic commitment under sec. 971.17(1), Stats., serves the important state interest of ensuring that the defendant receive a thorough and accurate evaluation of his or her present mental condition. This objective will more likely be accomplished once a defendant is committed than during the hectic proceedings at trial or during any post-trial hearings. Once the defendant is committed, the sole focus is on evaluating his or her present mental condition, not on the defendant's mental condition prior to or at the time of the criminal act. Because the defendant has committed a crime, the public is entitled to the assurance that the defendant's mental condition and dangerousness will be thoroughly evaluated under circumstances that will best accomplish this objective, while ensuring that the defendant's right to be released if he or she has recovered or is no longer dangerous is protected. The commitment of a defendant under sec. 971.17(1) ensures that the defendant will receive an evaluation of

his or her present mental condition that is free from the time pressures of the trial and post-trial hearings. In addition, the defendant has an opportunity for re-examination and release under the procedures set forth in secs. 971.17(2) and 51.20(16)(c). Therefore, we conclude that sec. 971.17(1), providing for automatic commitment following a finding of not guilty by reason of mental disease or defect, satisfies due process requirements.

We also conclude that sec. 971.17(1), Stats., does not violate the equal protection clause of the fourteenth amendment. As we recognized in *Schopf,* the equal protection clause disapproves only irrational and arbitrary classifications. 45 Wis. 2d at 651. The classification made by the legislature in this case between civil commitment and criminal commitment following a finding of not guilty by reason of mental disease or defect is neither irrational nor arbitrary. In *Jones,* the Supreme Court noted that there are important differences between the class of potential civil-commitment candidates and the class of insanity acquittees. The Court recognized that many concerns associated with civil commitment are absent when one is committed after he or she has been found beyond a reasonable doubt to have committed a criminal act. Thus, the Court concluded that its holding ". . . accords with the widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." 103 S. Ct. at 3052–53.

Similarly, when a defendant is committed pursuant to sec. 971.17(1), Stats., he or she has already been found beyond a reasonable doubt to have committed a criminal act, which is unquestionably conduct outside the range of acceptable behavior. Thus, commitment under those circumstances does not involve the concern

associated with civil commitment that the person is being committed for conduct within the range of socially acceptable behavior. In addition, the fact that a person who has been found not guilty by reason of mental disease has committed a criminal act demonstrates a degree of dangerousness to society that may be lacking in the actions of one who is civilly committed. Because of the important differences between persons civilly committed and those committed pursuant to sec. 971.17(1), the legislature's classification between civil commitment and criminal commitment is neither arbitrary nor irrational.

Finally, we note that in *Jones*, the Court distinguished cases that we relied upon to reach our holding in *Kovach*. In *Kovach*, we noted that in *Baxstrom v. Herold*, 383 U.S. 107 (1966), the United States Supreme Court held that a prisoner completing his sentence could not be committed without affording him the procedural protections provided to citizens involuntarily civilly committed. We also cited *Humphrey v. Cady*, 405 U.S. 504 (1972), in which the United States Supreme Court discussed, but did not decide, constitutional issues involving differing procedures afforded persons civilly committed and those committed under the Wisconsin Sex Crimes Act. As the Court indicated in *Jones*, however, neither *Baxstrom* nor *Humphrey* involved an insanity acquittee. 103 S. Ct. at 3052, n. 19. Both *Jones* and this case involve a defendant who has committed a criminal act but who has been found not guilty by reason of insanity or mental disease or defect. In addition, in a footnote the Court distinguished *Jackson v. Indiana*, 406 U.S. 715 (1972), which we also relied on in *Kovach*. The Court noted that in *Jackson*, unlike *Jones*, there was never any affirmative proof that the accused had committed criminal acts or was otherwise dangerous. 103 St. Ct. at 3049, n. 12. Thus, *Jackson* did not involve the situation pres-

ent in *Jones* or in this case in which there was proof beyond a reasonable doubt that the acquittee had committed a criminal act. It therefore appears that our reliance in *Kovach* on certain cases to support the holding that the automatic commitment procedure in sec. 971.17, Stats. 1973, was unconstitutional was misplaced.

We are convinced by the reasoning in *Jones* that our holding in *Kovach* that there must be a hearing and finding of present mental illness and dangerousness prior to ordering commitment under sec. 971.17 (1), Stats., was based on an erroneous interpretation of what the Federal Constitution requires. We therefore hold that sec. 971.17 (1), which provides for automatic commitment after a finding of not guilty by reason of mental disease or defect, does not violate either the due process or the equal protection clauses of the fourteenth amendment. Our holding in *Kovach* to the contrary is overruled.

Field nevertheless argues that even if the automatic commitment procedure of sec. 971.17 (1), Stats., does not violate the fourteenth amendment to the United States Constitution, we should interpret the Wisconsin Constitution as requiring that after a defendant has been found not guilty by reason of mental disease or defect and before the defendant is committed, there must be a hearing and a finding that the defendant is presently mentally ill and in need of institutionalized treatment. We have repeatedly held that Art. I, sec. 1 of the Wisconsin Constitution, cited in full below,[4] is substantially equivalent to the due process and equal pro-

---

[4] Article I, sec. 1 of the Wisconsin Constitution provides:
"Equality; inherent rights. SECTION 1. All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

tection clauses of the fourteenth amendment to the United States Constitution. *See State ex rel. Cresci v. H&SS Department,* 62 Wis. 2d 400, 414, 215 N.W.2d 361 (1974); *State ex rel. Sonneborn v. Sylvester,* 26 Wis. 2d 43, 49–50, 132 N.W.2d 249 (1965). We have also recognized that this court has the power to apply higher constitutional standards than those required of states by the Federal Constitution. *Cresci,* 62 Wis. 2d at 413. As previously noted, we construe *Jones* as holding that such a hearing and finding are not mandated by the Federal Constitution. Similarly, we are not convinced that the Wisconsin Constitution should be interpreted in this case to require what the United States Constitution does not.

We conclude that prior to ordering that Field be committed under sec. 971.17(1), Stats., there was no constitutional requirement for a hearing after he was found not guilty by reason of mental disease, or for a finding that he was presently mentally ill and in need of institutionalized treatment. Therefore, the commitment order may stand regardless of any error that might have occurred during the third phase of the trial.[5]

---

[5] In this case, by conducting a third phase hearing and making a finding of present mental illness and dangerousness prior to ordering Field's commitment, the trial court went beyond what was constitutionally required. We are convinced, however, that under the standards enunciated in *Kovach,* the court did not err in finding that Field was presently mentally ill and dangerous based on testimony and evidence adduced during the first two phases. The state relied solely on the evidence presented during the first two phases to meet its burden of proof at the third phase. This testimony and evidence demonstrated that Field was suffering from a mental disease that could recur under stressful situations. The trial court could reasonably conclude that the disease still existed at the time of the third phase hearing, and that Field was presently mentally ill and in need of institutionalized treatment. We therefore conclude that the state proved to a reasonable certainty by evidence that was clear, satisfactory and

The concurring opinion, which disagrees with the majority's conclusion that the *Kovach* third phase hearing be eliminated, as well as disagreeing with the majority's addressing the constitutional issue, requires response.

The concurring opinion notes that the majority has reframed the issue in this case to be something other than that presented by the parties and the court of appeals on certification. (*See* Abrahamson, J., concurring op. at 289). That is correct, but only up to the point where this court originally accepted the certification. A great deal has occurred in this record since that time which the concurring opinion fails to point out.

The issue framed by the majority became an issue in this case because of the recent United States Supreme Court decision in *Jones v. United States*, —— U.S. ——, 103 S. Ct. 3043 (1983). As the concurring opinion acknowledges, *Jones* was decided after the certification of this case to this court. Thus, the issue that the parties originally presented to the trial court and court of appeals was framed without the benefit of the decision in *Jones*.

This court accepted the certification on August 9, 1983. On August 22, 1983, approximately five months *before* oral argument and two months after *Jones* was decided, the state filed a motion with this court to allow submission of additional briefs. The state requested that this court:

"allow the parties an opportunity to express their respective views on what impact, if any, the decision of the United States Supreme Court in *Jones v. United States*, 33 Cr. L. 3233, issued June 29, 1983, has on this case. The state believes the issues discussed and analysis

convincing, that Field was presently mentally ill and in need of institutionalized treatment at the time he was ordered committed.

set forth in this recent case are pertinent to the instant case."

This court granted the motion.

The state filed a supplemental brief in which it discussed the constitutionality of the automatic commitment provision, sec. 971.17, Stats. The state argued that in light of the decision in *Jones,* this court should overrule *State ex rel. Kovach v. Schubert,* 64 Wis. 2d 612, 219 N.W.2d 341 (1974), and should uphold the constitutionality of sec. 971.17. (State's Supplemental Brief at 3.)

The defendant subsequently filed a supplemental reply brief. The defendant responded to the state's arguments concerning the applicability of *Jones* to *Kovach,* arguing that the holding in *Kovach* is distinguishable from *Jones,* and that "Even assuming that guarantees of the federal constitution may be elucidated by reference to *Jones* . . . , this Court in . . . *Kovach* . . . provided a legitimate constitutional analysis that can be and should be sustained on the basis of the Constitution of the State of Wisconsin." (Defendant's Supplemental Reply Brief at 6.) At oral argument before this court, both parties again had the opportunity to present arguments to this court concerning the applicability of *Jones* to our prior holding in *Kovach* that the automatic commitment procedure in sec. 971.17(1), Stats., was unconstitutional. Thus, contrary to the statement in the concurring opinion that ". . . the court is deciding an issue of constitutionality without the benefit of adversarial briefs or adversarial oral argument" (Abrahamson, J., concurring op., at 292), the above events clearly indicate that both the state and the defendant had full opportunity to address and debate the constitutional issue ultimately decided by the majority in this case.

The concurring opinion notes that this court decided the constitutional issue without the ". . . benefit of counsel's having considered, argued, and refined the constitutional issues in the trial court and in the court of appeals. . . ." (Abrahamson, J., concurring op. at 292–293). Were the issues in this case the kind that the concurring opinion later urges this majority to consider (*See* Abrahamson, J., concurring op., at 295–296), the concurring opinion's criticism might have merit. However, the constitutional question presented in this case is such that it is not at all dependent upon the development of a factual record in the lower courts.

The concurring opinion also inappropriately and incorrectly labels the majority's opinion reversing *Kovach* as an advisory opinion. (*See* Abrahamson, J., concurring op., at 295). An advisory opinion is an opinion that ". . . may be rendered by a court at the request of the government or an interested party indicating how the court would rule on a matter *should adversary litigation develop.* An advisory opinion is thus an interpretation of the law *without binding effect.*" (Emphasis supplied.) Black's Law Dictionary at 50 (5th ed. 1979). In this case, adversary litigation had developed, and one of the issues raised and argued to this court by the parties to this litigation concerned the constitutional question decided by the majority, and its implications for our prior decision in *Kovach*. That issue was relevant to the resolution of this case, and the decision rendered by the majority is binding on the parties to this case.

The concurring opinion says that, in the interest of fairness to the defendant, this case should be decided on the basis of the rules applicable under *Kovach*. The majority *has* applied the rules applicable under *Kovach* to this case. *See* footnote 5, *supra*. Even when we applied the rules applicable under *Kovach* to the other

issues presented in this case, we concluded that the defendant's position on those issues lacked merit. Therefore, the result for the defendant, under either analysis, is precisely the same.

The majority also rejects any implication that its holding reversing *Kovach* is not fair to the defendant in this case. As noted above, both parties were afforded an opportunity well in advance of oral argument to brief the issue of the impact of the decision in *Jones* on this case. Both parties again had the opportunity to discuss this issue at oral argument. The fact that the defendant ". . . did not seriously or extensively deal with the question of reversing *Kovach*" (Abrahamson, J., concurring op., at 292), even though both parties were aware that this was an issue in this case, does not make the majority's decision to address that issue and to apply the holding on that issue to this case unfair to the defendant.

*By the Court.*—The order of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (concurring). The state, the defendant, and the court of appeals, on certification, framed the issue presented by this case as follows: Did the trial court err when it did not hear testimony at the third phase of the trial and relied on evidence presented in the first two phases of the trial to declare the defendant mentally ill and dangerous and to commit him.

The majority decides this issue in footnote 5, page 285, of the opinion, apparently as an aside, as dictum, but couched in the linguistic trappings of a holding. As I see it, the majority opinion probably sets forth this holding to preclude the defendant from claiming denial of due process on the ground that the majority has applied a new rule of law to his case retroactively

and to his possible detriment. I view footnote 5 as the proper holding of the court and concur in it.

The majority, however, reframes the issue for review. It says the issue is whether the court should reverse its holding in *State ex rel. Kovach v. Schubert,* 64 Wis. 2d 612, 219 N.W.2d 341 (1974), and declare that sec. 971.17(1), Stats. 1981–82, previously declared unconstitutional, is now constitutional.

The majority then decides to reverse *Kovach* and to apply the reversal of *Kovach* retroactively to this case. *Supra,* p. 285. The state asked the court for a prospective ruling as to sec. 971.17(1) and the validity of *Kovach,* not a retroactive ruling applicable to this case tried under *Kovach.* The state in its supplemental brief and at oral argument carefully explained that, in the interest of fairness, this case should be decided on the basis of the rules applicable under *Kovach.* Unwilling to follow the state's suggestion that it render a wholly prospective ruling, the majority concludes that *Kovach* is retroactively overruled.

I cannot join the majority in its retroactive application of the reversal of *Kovach.* I agree with the state's position that in fairness to this defendant—and in fairness to any other defendants who have been tried under the *Kovach* decision and who may appeal their cases— a reversal of the *Kovach* decision must be a wholly prospective ruling. In light of footnote 5 and the fairness, due process question, a trial or appellate court would be wise to decide an issue in a case tried in accordance with *Kovach* both as if *Kovach* applied and as if *Kovach* did not apply.

The only reason I can see for the majority's decision not to follow the state's suggestion that the court render a wholy prospective ruling is that the majority may be concerned that a wholly prospective ruling is in effect an advisory ruling for future cases and might

be construed as dictum and nonbinding. If that is the majority's concern, it need not be. This court has in other cases ruled on the constitutionality of a statute for future application even though the ruling was not necessary to the decision of the case before the court. See, *e.g.*, *Sigma Tau Gamma Fraternity House v. Menomonie*, 93 Wis. 2d 392, 409, 288 N.W.2d 85 (1980). Indeed the *Kovach* decision itself was totally prospective. *Kovach, supra*, 64 Wis. 2d at 624. Furthermore this court has said that a statement in an opinion germane to, but not decisive of, the controversy, is not dictum but will be recognized as a binding decision. *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981).

Whether this court will follow the teachings of a case in a subsequent case apparently depends not on whether the teachings are labeled dictum or holding or of retroactive or prospective effect but on whether the majority of the court finds the earlier teachings of continuing persuasiveness and validity. Compare *May v. Skelley Oil Co.*, 83 Wis. 2d 30, 38, 264 N.W.2d 574 (1978) (a prospective ruling) and *Reiter v. Dyken*, 95 Wis. 2d 461, 474, 290 N.W.2d 510 (1980) (prospective ruling in *May* labeled dictum and viewed as not binding) with *J.M.S. v. Benson*, 98 Wis. 2d 406, 297 N.W.2d 18 (1980) (holding) and *In re R.W.L.*, 116 Wis. 2d 150, 341 N.W.2d 682 (1984) (overruling holding of *J.M.S.*).[1]

---

[1] "An appellate court has always been recognized as having the right to overrule—surely this would encompass the right to overrule prospectively when, after due consideration, it is the court's findings that there are just and compelling reasons for doing so." *Dupuis v. General Casualty Co.*, 36 Wis. 2d 42, 47, 152 N.W.2d 884 (1967).

For a discussion of the question of prospectivity and retroactivity, see, *e.g.*, Schaefer, *Prospective Rulings: Two Perspectives*, 1982 Sup. Ct. Rev. 1; Beytagh, *Ten Years of Non-Retroactivity: A Critique and a Proposal*, 61 Va. L. Rev. 1557 (1975);

Furthermore, I cannot join the majority as it reaches out in this case to decide the *Kovach* constitutional question. First, the generally accepted rule is that a court should not anticipate a question of constitutional law before it becomes necessary to decide it.[2] More important in this case, the court is deciding an issue of constitutionality without the benefit of adversarial briefs or adversarial oral argument.

Both the state and the defendant assumed that the defendant woud not be affected personally by any advisory decision this court might make relating to the reversal of *Kovach*. Accordingly the defendant understandably concluded that he did not have an adversary interest in the *Kovach* issue and thus did not seriously or extensively deal with the question of reversing *Kovach*. The defendant asserted in his supplemental brief (and made similar comments at oral argument) that he "should not be required to respond to the State's arguments on behalf of other litigants who under other circumstances may have an actual controversy with the State and be in a position to more fully explicate their arguments in support of their contentions that their constitutional rights will be violated." (Defendant's Supplemental Brief, p. 4.)

The state raised the issue of reversing *Kovach* and eliminating the third phase of the trial for the first time in this court and in a supplemental brief. The state has not been tardy; it relies on *Jones v. United States,* ── U.S. ──, 103 S. Ct. 3043 (1983), which was decided after the certification of this case. But this court does not have the benefit of counsels' having considered, argued, and refined the constitutional issues in the trial

Kamisar, *Gates, "Probable Cause," "Good Faith" and Beyond,* 69 Iowa L. Rev. 551, 601–604 (1984).

[2] See, *e.g., State v. State Fair Park, Inc.,* 21 Wis. 2d 451, 453, 124 N.W.2d 612 (1963).

court and in the court of appeals and this court does not have the benefit of a trial court or court of appeals decision discussing the theoretical and practical implications of the reversal of *Kovach*.

This case is the third case in 15 years in which the court has considered the constitutionality of automatic commitment following an insanity acquittal. In each of the three cases, the court announces a new rule, yet always bases its decision on its interpretation of decisions of the United States Supreme Court which are not directly on point.

In the first case, *State ex rel. Schopf v. Schubert*, 45 Wis. 2d 644, 173 N.W.2d 673 (1970), a 4–3 decision, the court held that automatic commitment upon an insanity acquittal is constitutional. In the second case, *State ex rel. Kovach v. Schubert*, 64 Wis. 2d 612, 219 N.W.2d 341 (1974), another 4–3 decision, the court held that automatic commitment upon an insanity acquittal is unconstitutional. Now relying on *Jones v. United States*, 103 S. Ct. 3043 (1983), the court holds that automatic commitment upon an insanity acquittal is constitutional.

The *Jones* case does not directly deal with the question of automatic commitment upon an insanity acquittal. The issue in *Jones* is not whether the Federal Constitution prohibits automatic commitment following an insanity acquittal but rather, in the Court's own statement of the issue, whether an acquittee "who was committed to a mental hospital upon being acquitted of a criminal offense by reason of insanity, must be released because he has been hospitalized for a period longer than he might have served in prison had he been convicted." *Jones, supra,* 103 S. Ct. at ——.

I recognize that language in *Jones* implies that automatic commitment following an insanity acquittal is constitutional. Nevertheless, I think the majority errs

in slavishly applying this language to *Kovach* when this issue was not squarely before the *Jones* court and when the issue was not fully argued before this court.

More important, the majority errs when it abandons the third phase procedure, whether required by the federal constitution or not, without fully analyzing the impact of its decision on the administration of the criminal justice system in this state. In deciding whether to reverse *Kovach,* the majority should determine the approach this court should take at this time, assuming the *Kovach* third phase hearing may not be constitutionally required. As a matter of sound administration of the criminal justice system, would this court be wiser to retain or to eliminate—at least for the immediate future —the commitment hearing as the third phase of the trial?

One might say that the elimination of the *Kovach* third phase hearing merely reinstates the legislative intent of automatic commitment, and that the legislature, not the court, should consider the sound administration of the criminal justice system. I do not find this reasoning persuasive. The legislature has left significant questions unanswered in sec. 971.17(1) and (2). As a result, the court will have to fill these gaps in the statute considering both the constitutional requirements and the sound administration of the criminal justice system.

A strong argument can be made for retaining the commitment hearing as part of the trial, at least until the legislature acts or a case arises in which the issue is contested. As Justice Robert Hansen explained in his dissent in *Kovach,* even if automatic commitment upon an insanity acquittal is not unconstitutional, requiring the commitment hearing to be a third phase of the trial is a "proper and prudent procedural requirement." *Kovach, supra,* 64 Wis. 2d at 638. The third phase trial hearing arguably takes less time and money

than a separate hearing and does not harm the state, the defendant, or the public. The medical witnesses have had the opportunity to examine and observe the defendant from the plea to the time of trial—generally a substantial period of time. They need not make another examination for purposes of the commitment hearing. The medical witnesses have testified in phase two and, as in this case, additional testimony may not be necessary. If the medical witnesses have to testify at the third phase, they are generally available and prepared since they have just testified in phase two. There is no showing that conducting an examination shortly after trial, when the defendant may be in an institution in another part of the state, offers an advantage to the state, the defendant, or the medical witnesses.

Aside from the benefits of retaining the *Kovach* procedure, the reversal of *Kovach* raises several questions, as the state's brief points out, none of which the majority addresses. I recognize that a court should answer only the questions raised in the case and that the court cannot provide answers to all the questions that may arise in the future, but since the court is giving what on close analysis is in effect a prospective advisory opinion reversing *Kovach,* it should go ahead and advise on the obvious issues that must be answered if a trial court is to conduct a post-trial hearing: (1) When should the hearing be held after automatic commitment upon a verdict of not guilty by reason of mental disease or defect; (2) What issues must be determined at that first hearing, what level of proof is required, and who has the burden of proof; and (3) Does this hearing pass constitutional muster?

The majority apparently contemplates that an insanity acquittal at the second phase of the trial will be followed by automatic commitment, pursuant to sec.

971.17(1), Stats. 1981–82, and subsequent examination, pursuant to sec. 971.17(2), according to the timetable established in sec. 51.20(16) of the Mental Health Act.

But when must the first post-trial hearing be held under this procedure? The schedules set forth in sec. 51.20(16)(c) base the date of the post-trial hearing on the date of the previous commitment hearing.[3] Does the finding at the second phase of the trial that the acquittee is not responsible by reason of mental disease or defect constitute a prior commitment hearing for the purpose of sec. 51.20(16)(c)? If so, then no hearing may be held within the first 30 days of the second phase of the trial. The court may hold a hearing after 30 days but within 120 days of the second phase of the trial. After 120 days of the second phase of the trial the court must hold a hearing within 30 days of the filing of a petition for reexamination. Thus, if the second phase of the trial constitutes a prior hearing for purposes of sec. 51.20(16)(c), an insanity acquittee may have no right to a hearing until 150 days after the second phase of the trial has concluded. By then many months may have passed since the crime, when, according to the jury, the defendant was suffering from a mental disease or defect.

Alternatively, the second phase of the trial may not be construed as a prior commitment hearing for pur-

---

[3] Sec. 51.20(16)(c) reads as follows:

"(c) If a hearing has been held with respect to the subject individual's commitment within 30 days of the filing of a petition under this subsection, no hearing shall be held. If such a hearing has not been held within 30 days of the filing of a petition, but has been held within 120 days of the filing, the court shall within 24 hours of the filing order an examination to be completed within 7 days by the appropriate board under s. 51.42 or 51.437. A hearing may then be held in the court's discretion. If such a hearing has not been held within 120 days of the filing, a hearing shall be held on the petition within 30 days of receipt."

poses of sec. 51.20(16)(c). This interpretation may be stretching the statutory language because sec. 971.17(2) refers to a "reexamination," which by definition requires a prior examination. Nevertheless, if the second phase of the trial does not constitute a prior hearing for purposes of sec. 51.20(16)(c), the acquittee could presumably file a petition for reexamination immediately upon being committed, and would be entitled to a hearing within 30 days, because no other hearing as to commitment would have been held within 120 days of filing the petition.

I emphasize the timing of the first post-trial hearing because to the extent that *Jones* may be read to permit automatic commitment following an insanity acquittal it must also be read to require—under the Federal Constitution—that "every acquittee has [a] prompt opportunity to obtain release if he has recovered." 103 S Ct at 3050. The *Jones* Court did not decide whether the 50-day period applicable in the District of Columbia is constitutionally acceptable. *See* 103 S. Ct. at 3049, n. 11. Nor has this court decided whether the interval prior to a first post-trial hearing under our laws, which may be as long as 120–150 days, is constitutional. *See supra* at 281.

In addition to the problem of how soon the first post-trial hearing must be held, eliminating the third phase of the trial also raises the following questions:

Is the issue at the initial post-trial hearing whether the acquittee is presently both mentally ill and in need of institutionalized treatment, as *Kovach* required at the third phase (see Wis. J. I. Cr. no. 607), or whether the acquittee is dangerous, as required at reexamination hearings under *Gebarski? State v. Gebarski,* 90 Wis. 2d 754, 280 N.W.2d 672 (1979).

Who has the burden of proof—the state or the acquittee?

What is the level of proof required? Beyond a reasonable doubt? Clear, satisfactory and convincing? A preponderance of evidence?

These constitutional and procedural questions have been raised but not fully addressed by the state's briefs in this case. Since the majority is giving what on close analysis is in effect a prospective, advisory opinion eliminating the third-phase *Kovach* hearing, it should give advice as to the obvious constitutional and procedural issues that will result. Those issues are not dependent on the facts of a particular case. The majority should request the state to submit supplemental briefs and should request amicus briefs from interested persons addressing these issues. I believe that it would be sounder judicial policy to decide these issues now than force trial courts, state's attorneys, defense counsel, and defendants to proceed without direction.

I prefer, in this case, to view the first post-acquittal hearing pragmatically. Because the majority's approach leaves too many unsolved problems, I conclude that the court ought not at this time eliminate the *Kovach* third phase hearing and introduce a new hearing without giving lawyers and courts any guidance as to how to proceed in this new hearing. I would prefer that in this case the court alert the lawyers, courts, and the legislature that the *Kovach* third phase commitment procedure, although constitutional, may no longer be required as a matter of federal constitutional law. I think it likely that in the near future an appropriate case will present a reasoned analysis for retaining or eliminating the *Kovach* third phase hearing and will present the issues the state has raised relating to the procedures to be followed in the first post-trial hearing after an insanity acquittal. The court can then decide these issues. It is also likely that the legislature may revise sec. 971.17(1) and (2) and may set forth the requirements for the

first post-trial hearing or that it may adopt a proposal of the Judicial Council, or some other source, which would substantially alter the insanity defense. In the interim, we can proceed with the *Kovach* hearing which is constitutional and appears to be working fairly well, although it too presents questions.